UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE AMERICAN EXPORT GROUP & INTERNATIONAL SERVICES, INC. DBA AEGIS, INC., a Delaware Corporation | Case No: 1:16-cv-05044 |
| Plaintiff, | |
| vs. | JURY TRIAL DEMANDED |
| QUALITY BEAUTY SUPPLY CO., INC., an Illinois Corporation | |
| Defendant | |

## COMPLAINT

Plaintiff The American Export Group & International Services, Inc. dba AEGIS, Inc. ("AEGIS") brings this Complaint against Quality Beauty Supply Co., Inc. ("QBS") for Federal trademark infringement, Federal and state unfair competition, common law trademark infringement, and deceptive trade practices. In support of its Complaint, AEGIS alleges as follows:

### PARTIES

1. AEGIS is a Delaware corporation with the business address 2424 Dempster Drive, Coralville, Iowa 52241. AEGIS is in the business of manufacturing and distributing cosmetic preparations for women's eye lashes and eyebrows and various related cosmetic products and accessories for women.

2. Upon information and belief, QBS is an Illinois corporation with its principal place of business at 281 S. River Road, Des Plaines, Illinois 20016. On information and belief, QBS is in the business of importing and distributing cosmetic products and spa-related products to sub-distributors and to spas. QBS's website is www.qualitybeautysupply.com

1

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction under 28 U.S.C. § 1338(a) and § 1338(b) as well as 28 U.S.C. § 1331 in that this case arises under the Federal trademark infringement and false designation of origin laws of the United States, *United States Trademark Act of 1946, as amended, 15 U.S.C. § 1051 et. seq. (the "Lanham Act")* as more fully appears, and because a substantial part of the events or omissions giving rise to the claims complained of herein occurred and are occurring within this judicial district. Subject matter jurisdiction over those claims that arise under state law is based upon the principles of supplemental jurisdiction set forth in 28 U.S.C. § 1367, and the provisions of 28 U.S.C. § 1338(b) as an action asserting a claim under state laws of unfair competition and the Illinois common law joined with a substantial and related claim under the federal trademark laws.

4. This Court has personal jurisdiction over QBS and venue is proper in the Northern District of Illinois under §1391(b) because QBS is headquartered in this District and actively doing business in this District; because QBS is advertising and selling the products bearing the infringing trademarks within this District and to customers within this District; and because a substantial part of the conduct, events or omissions giving rise to the claims arose in the Northern District of Illinois in that AEGIS is being damaged in this District because of the trademark confusion occurring in this District.

**FACTUAL BACKGROUND – ALLEGATIONS COMMON
TO ALL CAUSES OF ACTION**

5. Since at least as early as January 1997, AEGIS and its predecessors in interest have been promoting and selling women's eyebrow and eye lash preparations, cosmetics and related accessories in the United States under the marks INTENSIVE and INTENSIVE LASH AND BROW TINT. AEGIS currently sells its products under these marks in the United States exclusively through Universal Companies, Inc.

6. AEGIS's well-established trademark rights are reflected in part by its Federal trademark registrations for these marks. One of these marks is incontestable under 15 U.S.C. § 115(b), which states:

> [T]he registration shall be conclusive evidence of the validity of the registered mark and of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce.

7. The details of the AEGIS Federal trademark registrations are as follows:

INTENSIVE, Registration No. 4497246, registered March 18, 2014

Class 3 - beauty care cosmetics; cosmetic preparations; cosmetic preparations for eye lashes; eyelash tints; eyebrow tints; tint spot cleanser for eyelashes; finishing eye cream; cream developer used with eyelashes and eyebrows; eye makeup remover; eyebrow gel; tint developer for eyebrows; cosmetic kits comprised of eyebrow tint spot cleansers, eyebrow tint cream developer, tint brushes, tint protection pads, tints of various colors, all sold as a unit with promotional marketing materials and training manual.

Class 35 - On-line retail store services and mail order catalog services featuring beauty care cosmetics; cosmetic preparations; cosmetic preparations for eye lashes; eyelash tints; eyebrow tints; tint spot cleanser; finishing eye cream; cream developer used with eyelashes and eyebrows; eye makeup remover; eyebrow gel; tint developer; colorants for use in the preparation of cosmetics; colorants for use in the preparation of eyelash and eyebrow tints; cosmetic kits comprised of tint cream developer, tint brushes, tint spot cleansers, tint protection pads, tints of various colors, promotional marketing tools, and a training manual.

INTENSIVE LASH AND BROW TINT, Registration No. 3401272, registered March 25, 2008

Class 2 – Colorants for use in the manufacture of cosmetics

8. AEGIS has also established significant common law rights in its trademarks based on its extensive use in commerce for more than nineteen years.

9. Many persons in the trade and many end-users rely on the INTENSIVE trademarks as indicators of high quality and reliability. Because of its long use and multi-millions of dollars in sales of cosmetic products in the United States bearing these marks, the INTENSIVE trademarks

have achieved a high level of recognition and represent valuable goodwill owned exclusively by AEGIS.

## WRONGFUL CONDUCT OF QBS

10. On information and belief, at least as early as March of 2016, without authorization from AEGIS, QBS began importing, advertising and selling in its online catalog cosmetic eye products under the names "Intensive Developer," "Intensive Tint Brush" and "Original Intensive Tint." Web pages from QBS's web site are submitted with this Complaint as Exhibits 1 - 4 and substantiate these allegations.

11. In a flyer submitted with this Complaint as Exhibit 5, QBS is marketing one of its product as "Intensive Hair Cream Dye." This flyer, Exhibit 5, in the upper right hand corner refers to the "20th Anniversary" of the "the original," further implying that the knock-off product that QBS has recently begun to import and which QBS is advertising is the authentic AEGIS INTENSIVE product, when in fact it is not the authentic product. That flyer further referred to the product sold by QBS as having been "Voted Best Tint" despite the fact that there exists no such industry-wide award. QBS has invented for its own deceptive purposes this bogus award and has therefore falsely advertised its own product and has made misrepresentations about its own product. At the bottom of the flyer the mark INTENSIVE appears by itself in large type. It is alleged that flyer was distributed by QBS at the "America's Beauty Show by Cosmetologists Chicago" at McCormick Place in Chicago on March 12 -16, 2016. AEGIS assumes that the same flyer has been distributed at other venues in addition to this national trade show.

12. At this same national trade show in Chicago on March 12–16 of this year, representatives of QBS made false and disparaging statements to persons at the trade show about the AEGIS products bearing the INTENSIVE trademarks. More specifically, these agents of QBS

stated the AEGIS INTENSIVE products "did not work" and were merely "goo," and that QBS was importing the "<u>original</u> INTENSIVE from Germany" (emphasis added), thereby insinuating that the authentic AEGIS INTENSIVE products were not the authentic INTENSIVE products or were otherwise inferior to QBS's infringing products being sold under the identical mark.

13. On March 25, 2016 counsel for AEGIS sent by email and by US Mail the cease and desist letter attached as Exhibit 6. QBS as of the date of filing this lawsuit has not responded to that letter and has refused to cease its unlawful and intentional conduct as alleged herein.

**FIRST CAUSE OF ACTION**
**TRADEMARK INFRINGEMENT – 15 U.S.C. § 1114**

14. AEGIS incorporates the allegations of Paragraphs 1 - 13, as if fully set forth herein.

15. AEGIS is the owner of the Federally-registered INTENSIVE trademarks identified above.

16. QBS is using in commerce the AEGIS INTENSIVE trademarks on its website, on flyers, on marketing materials and on packaging, and is selling products bearing the identical INTENSIVE trademark.

17. QBS's use in commerce of the INTENSIVE trademarks on products exactly like the kind of products manufactured and sold by AEGIS is likely to cause confusion or to cause mistake or to deceive in violation of 15 U.S.C. § 1114.

18. QBS has had actual and constructive knowledge of AEGIS' trademark rights prior to beginning use of the mark INTENSIVE in the United States. QBS continues to intentionally infringe despite receiving a cease and desist letter from AEGIS.

19. AEGIS has not authorized or otherwise consented to QBS's use of the INTENSIVE marks on products of the same type offered by AEGIS.

20. QBS's unauthorized use of the INTENSIVE trademarks constitutes trademark infringement in violation of 15 U.S.C. § 1114.

21. The willful and intentional nature of QBS's trademark infringement makes this an exceptional case under 15 U.S.C. § 1117(a).

22. As a direct and proximate result of this trademark infringement, AEGIS has suffered and is suffering irreparable injury. AEGIS will continue to suffer irreparable injury unless the Court enters an injunction prohibiting QBS's conduct described above.

23. As a direct and proximate result of this trademark infringement, AEGIS has suffered and is suffering monetary damages in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
## FEDERAL UNFAIR COMPETITION – 15 U.S.C. § 1125(A)

24. AEGIS incorporates the allegations of Paragraphs 1 - 23, as if fully set forth herein.

25. QBS's unauthorized use in commerce of the registered INTENSIVE trademarks falsely suggests that QBS and its products are connected with, sponsored by, affiliated with or related to AEGIS. As alleged in Paragraphs 11 and 12 above, QBS has made false and deceptive statements to the public about its own products and about the AEGIS products.

26. The willful and intentional nature of QBS's false designations of origin and its false and deceptive product statements make this an exceptional case under 15 U.S.C. § 1125(a).

27. As a direct and proximate result of these false designations of origin and false and deceptive product statements, AEGIS will continue to suffer irreparable injury unless the Court enters an injunction prohibiting QBS's conduct described above.

28. Also as a direct and proximate result of these false designations and deceptive and false statements AEGIS has suffered and is suffering monetary damages in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
## VIOLATIONS OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
## 815 ILCS 510/2

29. AEGIS incorporates the allegations of Paragraphs 1 - 28, as if fully set forth herein.

30. QBS's illegal conduct alleged above constitutes numerous violations of the Illinois Deceptive Trade Practices Act, including the following:

    a.    Passing off goods or services as those of AEGIS. 815 ILCS 510/2(a)(1);

    b.    Causing likelihood of confusion or misunderstanding as to source, sponsorship, approval, or certification of goods or services. 815 ILCS 510/2(a)(2);

    c.    Causing likelihood of confusion or misunderstanding as to affiliation, connection, or association with or certification by AEGIS. 815 ILCS 510/2(a)(3);

    d.    Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that QBS has a sponsorship, approval, status, affiliation or connection that they do not have, or that its products have garnered certain industry-wide awards when in fact its products had not won any such awards. 815 ILCS 510/2(a)(5);

    e.    Representing that goods or services are of a particular standard, quality, or grade or that they are a particular style or model, when they are of another. 815 ILCS 510/2(a)(7);

    f.    Advertising goods or services with the intent not to sell them as advertised. 815 ILCS 510/2(a)(9);

    g.    Disparaging the authenticity and the quality of AEGIS's products bearing the mark INTENSIVE by making false and misleading representations to persons in the trade about the authenticity and the quality of those products. ILCS 510/2(a)(8);

h. Engaging in other conduct which similarly creates a likelihood of confusion or misunderstanding. 815 ILCS 510/2(a)(12).

31. QBS has willfully engaged in the above-referenced deceptive trade practices.

32. As a direct and proximate result of these unfair trade practices, AEGIS will continue to suffer irreparable injury unless the Court enters an injunction prohibiting QBS's conduct described above.

### FOURTH CAUSE OF ACTION
### UNFAIR COMPETITION – ILLINOIS COMMON LAW

33. AEGIS incorporates the allegations of Paragraphs 1 - 32, as if fully set forth herein.

34. QBS's misconduct alleged above constitutes unfair competition and trademark infringement under the common law of Illinois.

35. As a direct and proximate result of these acts of unfair competition, AEGIS has suffered irreparable injury and will continue to suffer irreparable injury unless the Court enters an injunction prohibiting QBS's conduct described above.

36. Also as a direct and proximate result of these acts of common law trademark infringement and unfair competition, AEGIS has suffered and is suffering monetary damages in an amount to be determined at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff AEGIS, Inc. requests that the Court declare and judgment be entered in favor of AEGIS, Inc. as follows:

A. That the Court order that Defendant Quality Beauty Supply, Inc., its officers, agents, directors, employees, representatives, successors and assigns, and all persons, firms, corporations in active concert or participation with QBS be immediately and permanently enjoined from:

(1) directly or indirectly infringing the INTENSIVE trademarks identified above in any manner including generally, but not limited to, importing, copying, distributing, advertising, selling, and/or offering for sale any cosmetic products or accessories that infringe AEGIS' INTENSIVE trademarks, including without limitation, hair dyes, eye shadow, eye brow tints, eyelash colorings, tint applicators and other accessories for applying eye make-up and tints, or using or displaying any trademarks that imitate or have a substantial similarity to the trademarks INTENSIVE, INTENSIVE LASH AND BROW TINT, INTENSIVE HAIR DEVELOPER, INTENSIVE TINT, ORIGINAL INTENSIVE TINT and INTENSIVE TINT BRUSH;

(2) engaging in any conduct that tends falsely to represent that, or is likely to confuse, mislead, or deceive dealers and purchasers, QBS's customers, and members of the public to believe that the actions of QBS, the products sold by QBS, or QBS itself is connected with AEGIS or its exclusive distributor, is sponsored, approved, or licensed by AEGIS, or is in some way connected or affiliated with AEGIS;

(3) causing further confusion with and injury to AEGIS' reputation, business or the AEGIS' INTENSIVE trademarks;

(4) claiming that any of its products have won industry-wide awards that they have not been awarded, and otherwise competing unfairly with AEGIS in any manner;

(5) infringing AEGIS' INTENSIVE trademarks and damaging AEGIS' goodwill, reputation and business.

B. That AEGIS be awarded damages in an amount sufficient to compensate it for the injuries it has sustained by reason of QBS's unlawful acts, including AEGIS' loss of goodwill, loss of past or future sales, and damages caused by QBS's infringement of AEGIS' common law trademarks, unfair competition, deceptive trade practices and trade disparagement. That AEGISs be awarded increased damages based on the intentional and willful nature of QBS's conduct complained of herein. That AEGIS be awarded all profits received by QBS

from the sale of products identified or advertised through the use of identical or confusingly similar commercial designations.

C. That the Court issue an order requiring QBS to pay to AEGIS such damages as AEGIS has sustained as a consequence of QBS's infringement of the registered INTENSIVE trademarks and unfair competition and to account for all gains, profits, and advantages derived by QBS from the sale of its infringing merchandise bearing the INTENSIVE registered trademarks and that the award by trebled as provided for under 15 U.S.C. § 1117; alternatively, that AEGIS be awarded statutory damages pursuant to 15 U.S.C. § 1117(c) of up to $ 500,000 for each registered trademark that QBS has willfully counterfeited and infringed.

D. That the Court issue an Order that AEGIS recover the costs of this action together with the reasonable attorneys' fees and prejudgment interest in accordance with 15 U.S.C. § 1117.

E. That AEGIS be awarded punitive damages for QBS's willful and malicious violations of the Illinois Deceptive Practices Act and for the common law trademark infringements.

F. That QBS be ordered to deliver up for destruction all advertisements, circulars, brochures, packaging, products bearing infringing trademarks and any other items in its possession, custody or control bearing the INTENSIVE trademarks or any other similar designations.

G. That QBS be ordered to prepare and send to its customers and persons in the trade corrective statements approved by AEGIS, correcting all false statements made and all misrepresentations made concerning the INTENSIVE trademarks and the INTENSIVE products; and to recall and make reasonable efforts to obtain the return of any infringing or confusingly similar products from its customers.

H. That judgment be entered in favor of AEGIS and against QBS on each cause of action in this Complaint.

I. That the Court provide AEGIS with such other and further relief as it deems just and proper, or that AEGIS is entitled to under the law.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

Dated: May 6, 2016

                                           Respectfully submitted,

Local Counsel (LR 83.15):

By: _/s/ A. Buchanan_

    Alfred L. Buchanan (IL Bar No. 6203889)
    Neal F. Thompson (IL Bar No. 6181456)
    Michaels, Schulwolf & Salerno, P.C.
    300 S. Wacker Drive
    Suite 1650
    Chicago, IL 60606
    Telephone:    (312) 428-4720
    Facsimile:    (312) 575-8679
    abuchanan@msslawpc.com
    nthompson@msslawpc.com

Lead Counsel:

    Roy S. Gordet, Esq. (CA Bar No. 103916)
    Law Offices of Roy S. Gordet
    235 Westlake Center #452
    Daly City CA 94015
    Tel. 650-757-6147
    Fax 650-735-3380
    Email roy@copyrightdirection.com
    (*pro hac vice* application forthcoming)

    **Attorneys for Plaintiff The American Export Group & International Services, Inc. dba AEGIS, Inc., a Delaware Corporation**