UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THE AMERICAN EXPORT GROUP &
INTERNATIONAL SERVICES, INC. DBA
AEGIS, INC., a Delaware Corporation

        Plaintiff,

        vs.

QUALITY BEAUTY SUPPLY CO., INC., an
Illinois Corporation; BIOSMETICS GMBH, a
Limited Liability Company Organized under the
Laws of Germany

        Defendants

Case No:
1:16-cv-05044-JJT

**PLAINTIFF'S RENEWED MOTION
FOR ALTERNATIVE SERVICE ON BIOSMETICS GMBH**

      Plaintiff, The American Export Group & International Services, Inc. dba AEGIS, Inc. ("AEGIS"), by its counsel, brings this *Renewed Motion for Alternative Service on Biosmetics GmbH*, following the August 9, 2016 hearing on Plaintiff's initial motion.[1] This Renewed Motion addresses the Court's concerns regarding the geographical limitations of Fed. R. Civ. P. 4(h)(2) and 4(f), and pursuant to the Court's further comments, also seeks an order authorizing "alternative forms of service that can be made outside the jurisdiction of the United States other than the Hague Convention."[2]

---

[1] *Plaintiff's Uncontested Motion for Leave to Serve Biosmetics GmbH Through Its Attorney in the Trademark Board Proceeding Pursuant to FRCP 4(f)(3) and 4(h)(2)*, filed July 21, 2016 ("Initial Motion"), is incorporated herein by reference.

[2] Transcript of Proceedings Before Hon. John J. Tharp, Jr., August 9, 2016, pp. 6-7 (Gordet Decl., Par. 9, Ex. 3).

Specifically, AEGIS seeks (i) an Order authorizing service on Biosmetics GmbH by delivering suit papers to its attorney Janice Housey (the same relief sought in AEGIS' Initial Motion), or in the alternative (ii) an Order authorizing service on Biosmetics GmbH by transmitting suit papers directly to its active e-mail accounts (and by fax if required).

## INTRODUCTION

On August 9, 2016, this Court provisionally denied AEGIS' Initial Motion, which sought leave, pursuant to Fed. R. Civ. P. 4(h)(2) and 4(f)(3), to serve German defendant Biosmetics GmbH by delivering suit papers to Biosmetics' Washington, D.C. attorney who was prosecuting a parallel administrative proceeding against AEGIS. In compliance with the Court's suggestion that AEGIS start the process of "service overseas," AEGIS' counsel promptly engaged an outside firm in the business of helping U.S. litigants with the lengthy and expensive process of effecting service under the Hague Convention. (Declaration of Roy S. Gordet ("Gordet Decl."), Paras. 2, 3). Despite every effort to expedite the process, however, counsel has been informed by the outside firm that Hague service might not be complete, if at all, until December 15, 2016. (Gordet Decl., Par.4).

AEGIS wishes to move this case forward. Each day that goes by, Biosmetics' Illinois distributor, co-defendant Quality Beauty Supply, Co., Inc. ("QBS"), continues actively promoting at its website products bearing the infringing marks, and presumably also importing and selling these products. (Gordet Decl., Par. 8).

While QBS has made no effort to implead Biosmetics, at the same time it incongruently takes the position that this case should not go forward without Biosmetics, which it characterizes

as a "necessary party" under Rule 19(a)(1)(B).[3]  In light of the potential for many more months of delay in serving Biosmetics under the Hague Convention, and this Court's August 9 comments expressing willingness to entertain supplemental briefing, AEGIS now renews its Initial Motion.

AEGIS respectfully submits that this Renewed Motion for Alternative Service should be granted because:

(1)   Addressing this Court's concerns, a reasonable construction of Rules 4(f)(3) and 4(h)(2) permits *service* on defendants outside the United States by *delivering* suit papers to counsel in the United States.  *This was the relief sought in AEGIS' Initial Motion.*

(2)   Alternatively, as recognized by *Rio Properties* and other cases, and cited with approval by the Seventh Circuit, defendants outside the United States may be served under Rules 4(f)(3) and 4(h)(2) by transmitting suit papers directly to their active e-mail accounts, and such service comports fully with requirements of Constitutional due process and the Hague Convention.  *This is one of the "alternative forms of service" authorized by <u>Rio Properties</u> that this Court suggested on August 9 that it would be willing to consider.*[4]

ARGUMENT

**A.    Biosmetics GmbH May be "Served" by Delivering Suit Papers to Its U.S. Counsel Because Rule 4 Draws a Distinction Between "Service" and "Delivery."**

This Court expressed concern that Rules 4(h)(2) and 4(f)(3), which apply to service "at a place not within any judicial district of the United States," preclude service on a foreign corporation by delivering suit papers to its attorney in the United States.  Transcript of Proceedings (Gordet Decl, Par. 9, Ex. 3), pp. 5-6.  However, the Court also indicated its willingness to consider supplemental briefing on this question.  *Id.* at 9.  This section of AEGIS' Renewed Motion addresses the Court's concern.

---

[3]   *Joint Initial Status Report*, Filed June 29, 2016 (Document # 22), Section 1.C, Defendant's Input, pp. 5-6.  While AEGIS certainly wants to include Biosmetics GmbH as a defendant, AEGIS does not agree that its claims against QBS should not proceed in the absence of Biosmetics GmbH.

[4]   Transcript of Proceedings (Gordet Decl., Par. 3, Ex. 3), pp. 6-7.

Rule 4 draws a distinction between "service" upon a party and physical "delivery" of papers (or other acts taken) to *effectuate* service. Because "service" on Biosmetics GmbH will necessarily occur where it is domiciled (in Germany – "a place not within any judicial district of the United States"), the act of effectuating such service by delivering suit papers to Biosmetics' attorney within the United States is permissible under Rules 4(h)(2) and 4(f)(3).

Rule 4(h) governs "serving a corporation ("domestic or foreign") and Rule 4(f) governs "serving an individual" ("in a foreign country"). Thus, Rule 4 establishes a scheme for "serving" corporate and individual *defendants*.[5] In the terminology of Rule 4, it is the defendant – not the summons and complaint – that is "served."

In contrast, the subsections of Rules 4(h) and 4(f) specify how such service must be made. *See, e.g.*, Rules 4(h)(1)(A), 4(h)(2) and 4(f)(2) (identifying the "manner," "means" and "method" for effectuating service). Where these subsections specify a particular manner, means or method, they speak of "delivering," "personal delivery" and "mail" in describing the physical act of transmitting suit papers. *See, e.g.*, Rules 4(h)(1)(B), (h)(2), and (f)(2)(C)(i). The subsections do not refer to "service" of suit papers because "service" is a term that is reserved to describe the legal consequence to defendant of plaintiff taking one or more of the physical acts listed in the rule's subsections. Indeed, in some circumstances it is legally possible to "serve" a defendant without ever physically delivering suit papers to the defendant, either by delivering them to someone else or even by means of publication.[6]

---

[5] *See, e.g.*, Rule 4(d)(1) (referencing "An individual, corporation, or association that is subject to service") and Rule 4(d)(1)(A)(ii) (referencing "a defendant subject to service").

[6] See, e.g., 16-108 Moore's Federal Practice - Civil § 108.111 (2015) ("constructive" or "substituted" service on defendant effectuated by delivering suit papers to defendant's "agent" or by leaving copies at defendant's "dwelling or usual place of abode with someone of suitable age and discretion who resides there.") (citing cases). In appropriate circumstances, it is even possible to "serve" a defendant via publication, without delivering the actual suit papers to anyone. *See Id.*

The careful distinction maintained between "service" (upon a defendant) and "delivery" (of papers) is significant. This is so because the geographical limitations on "service" in Rule 4(h) and 4(f) are conspicuously absent in the subsections specifying the "manner, means or methods." Thus, while the scope of Rule 4(f) concerns "serving an individual in a foreign country" (short title) and applies by its terms to *defendants* that "may be served at a place not within any judicial district of the United States," in stark contrast, the "manner, means and methods" in subsection 4(f)(3) (such individuals may be served "by other means not prohibited by international agreement, as the court orders") contain no such geographical limitation. Accordingly, Rule 4(f)(3) (via Rule 4(h)(2)) permits substituted "service" on Biosmetics GmbH in Germany by delivering suit papers to its attorney in Washington, D.C.

This reading comports with the courts' broad interpretation and liberal construction of Rule 4. The "general attitude of the federal courts is that the provisions of Rule 4 should be construed liberally in the interest of substantial justice . . . .'" *Kerr v. Pieschek,* No. 94-3289, 1996 U.S. App. LEXIS 986, at *7-8 (7th Cir. Jan. 8, 1996), quoting *Montgomery, Zukerman, Davis, Inc. v. Diepenbrock,* 698 F. Supp. 1453, 1458 (S.D. Ind. 1988) (quoting 4A Wright and Miller, *Federal Practice and Procedure* § 1083 at 10). "Rule 4 is a flexible rule that should be liberally construed to uphold service so long as a party receives sufficient notice of the complaint." *Bozich v. Mattschull (In re Chinin USA, Inc.*, 327 B.R. 325, 333 (Bankr. N.D. Ill. 2005), quoting *Chan v. Society Expeditions, Inc*., 39 F.3d 1398, 1404 (9th Cir. 1994).

The inclusion of a geographical limitation upon "service" but not upon the "manner, means or methods" of effectuating it should be presumed to have been intentional. "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the

disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23, 78 L. Ed. 2d 17, 104 S. Ct. 296 (1983), quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972). In such a circumstance, courts should "refrain from concluding . . . that the differing language in the two subsections has the same meaning in each" and should "not presume to ascribe this difference to a simple mistake in draftsmanship." *Id.*

While *Rio Properties* and a plethora of district courts have authorized service by delivering suit papers to a foreign defendant's U.S. - based counsel,[7] there is a dearth of authority specifically addressing this Court's concern about the geographical limitation in Rule 4(f)(3). We have found only one opinion even touching on this concern, *i.e.*, whether delivering suit papers to counsel in the United States is a valid means of effecting substituted "service" on a foreign corporation "at a place not within any judicial district of the United States" under Rule 4(f)(3).[8] In that case, the Court of Appeals acknowledged the issue while remanding and ordering the district court to exercise its discretion to consider the plaintiff's request for alternative service under Rule 4(f)(3), commenting:

> And while Rule 4(f)(3) addresses service only "at a place not within any judicial district of the United States," Fed. R. Civ. P. 4(f), arguably, when a court orders service on a foreign entity through its counsel in the United States, the attorney functions as a mechanism to transmit the service to its intended recipient abroad. The parties do not address that issue and we have no occasion to resolve it.

---

[7]  See case law cited in AEGIS' Initial Motion, including *Rio Properties, Inc. v. Rio Int'l Interlink,* 284 F.3d 1007, 1015 (9th Cir. 2002). See also, 1-4 Moore's Federal Practice - Civil § 4.52 (2015) (collecting cases, including *In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 930 (N.D. Ill. 2009); *Calista Enters. Ltd. v. Tenza Trading Ltd.*, 2014 U.S. Dist. LEXIS 118775, at *10–*12 (D. Or. Aug. 26, 2014); *CFTC v. Aliaga*, 272 F.R.D. 617, 619–621 (S.D. Fla. 2011); *D.C. Circuit Freedom Watch, Inc. v. Org. of the Petroleum Exporting Countries OPEC*, 766 F.3d 74, 81–84 (D.C. Cir. 2014)).

[8]  Counsel searched for, but was unable to locate the case law to which this Court referred at the August 9 hearing. See Transcript of Proceedings (Gordet Decl., Par. 9, Ex. 3), at 6.

*Freedom Watch, Inc. v. Org. of the Petroleum Exporting Countries OPEC*, 412 U.S. App. D.C. 359, 369, 766 F.3d 74, 84 (D.C. Cir. 2014). This is consistent with the notion that valid "service" on a defendant can occur in a foreign country by "means" of delivering suit papers to another person located in the United States, honoring the distinction between "service" in Rule 4(f) and the "means" of effecting service in subsection 4(f)(3).

For all of these reasons, AEGIS submits that "service" will be properly made on Biosmetics GmbH in Germany – "a place not within any judicial district of the United States" – by delivering suit papers to its attorney, Janice Housey, at her law offices in the United States. Attorney Housey will presumably "[function] as a mechanism to transmit the service to its intended recipient abroad." *Freedom Watch, Inc, supra,* 766 F.3d at 84. AEGIS respectfully requests the Court to authorize such service.

**B.     Biosmetics GmbH Also May be "Served" by Transmitting Suit Papers via Electronic Mail to the Addresses Used in the Ordinary Course of Its Business.**

This Court commented on August 9 that its denial of AEGIS' Initial Motion does not mean that there are not "alternative forms of service that can be made outside the jurisdiction of the United States other than the Hague Convention" and that it was "not precluding a motion seeking alternative service in any of those ways." Counsel believes the Court was referencing the "alternative forms" of service discussed in *Rio Properties, Inc. v. Rio Int'l Interlink,* 284 F.3d 1007, 1015 (9th Cir. 2002), and in particular, service via electronic mail ("e-mail").

In *Rio Properties*, the Ninth Circuit affirmed the district court's order under Rule 4(f)(3), approving each of three alternative methods of service on a Costa Rican based Internet gambling business. Those methods were (i) mailing suit papers to defendant's "international courier" located in Miami, Florida; (ii) mailing suit papers to defendant's attorney in Los Angeles, California; and (iii) transmitting suit papers via electronic mail to defendant's designated e-mail

address listed on its web site and print media. 284 F.3d at 1013, 1016-1017. While all three methods were approved, the court noted that "email was the only court-ordered method of service aimed directly and instantly at [defendant] RII, as opposed to methods of service effected through intermediaries like IEC [the courier] and Carpenter [the attorney]." *Id.* at 1017. The court concluded "not only that service of process by email was proper--that is, reasonably calculated to apprise RII of the pendency of the action and afford it an opportunity to respond-- but in this case, it was the method of service most likely to reach RII." *Id.*

Here, Biosmetics GmbH is not known to have an "international courier" (either in the United States or elsewhere). Service on Biosmetics GmbH by delivering suit papers to its attorney (in the United States) was the topic of AEGIS' Initial Motion. This leaves service by electronic mail. Accordingly, AEGIS respectfully requests this Court to authorize service on Biosmetics GmbH by transmitting suit papers to the designated e-mail address listed on Biosmetics' web site and to the other e-mail addresses at that domain that Biosmetics' officers have historically used to communicate with AEGIS in the ordinary course of business. (Gordet Decl., Paras. 6, 7). Service by e-mail is appropriate and necessary here for four reasons:

**(1) Seventh Circuit's Recognition of Service by E-Mail.** First, the Seventh Circuit Court of Appeals has approvingly recognized e-mail as a means of serving a defendant in a foreign country pursuant to Rule 4(f)(3). In *Santiago v. Anderson*, 496 Fed. Appx. 630 (7th Cir. 2012), in the context of considering the district court's dismissal of a complaint for lack of service on a defendant located in Iraq, the Court cited with approval the Ninth Circuit's decision in *Brockmeyer v. May*, 383 F.3d 798, 805-06 (9th Cir. 2004) ("explaining that Rule 4(f)(3), which permits service in foreign country 'as the court orders' so long as chosen method

comports with international agreements, imparts broad discretion and would allow for service by regular mail and e-mail).") *Id.* at 635.

**(2)  Service by E-Mail is Not Prohibited by International Agreement.**  Second, e-mail service on a corporation domiciled in Germany complies with the explicit requirement of Rule 4(f)(3) that the means of service ordered by the Court is "not prohibited by international agreement."  "Various courts have agreed that service by email is not prohibited by the Hague Convention."  *Lexmark Int'l, Inc. v. Ink Techs. Printer Supplies, LLC*, 295 F.R.D. 259, 261-62 (S.D. Ohio 2013) (collecting cases).  "Email service has been approved even where, as here, the country objects to Article 10 of the Hague Convention." *Id.*  (collecting cases).

While service on Biosmetics GmbH by means of international *postal* mail would be prohibited because Germany has objected to such service under Article 10,[9] there is no corresponding limitation on service by e-mail or other non-postal means.  In *Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329 (S.D.N.Y. 2015), the court acknowledged some conflicting authority, but held that e-mail service on German defendants is "not prohibited by international agreement," as follows:

> [T]he Court finds more persuasive the reasoning of several courts that have declined to extend countries' objections to specific forms of service permitted by Article 10 of the Hague Convention, such as postal mail, to service by other alternative means, including email. * * * [citations omitted]  *S.E.C. v. Anticevic*, No. 05 CV 6991, 2009 U.S. Dist. LEXIS 11480, 2009 WL 361739, at *4 (S.D.N.Y. Feb. 13, 2009) (authorizing service by publication and noting that "[n]either Germany nor Croatia explicitly objects to service by publication in their Declarations pursuant to the [Hague] Convention."); *In re S. African Apartheid Litig.*, 643 F. Supp. 2d 423, 434 (S.D.N.Y. 2009) (permitting service on counsel in Germany and noting that "[a]lthough Germany has objected to specific forms of service otherwise enumerated in the Hague Convention, it has not expressly

---

[9]   Germany has objected to service by postal mail under Article 10 of the Hague Service Convention. See *Hague Conference: Germany - Central Authority & Practical Information*: https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=402&disp=resdn

barred alternative forms of effective service not referenced in the Hague Convention.").

312 F.R.D. at 331-32.

*See also, Maclean-Fogg Co. v. Ningbo Fastlink Equip. Co.*, No. 08 CV 2593, 2008 U.S. Dist. LEXIS 97241; 2008 WL 5100414 (N.D. Ill. 2008) ("The Hague Convention does not prohibit service by e-mail or facsimile. [citation omitted] Therefore, this Court concludes that in certain circumstances service of process via e-mail and facsimile is appropriate and may be authorized under Fed. R. Civ. P. 4(f)(3).").

**(3) Service by E-Mail Comports with Due Process.** Third, service on Biosmetics GmbH by means of e-mail comports with constitutional requirements of due process. "To meet this requirement, the method of service crafted by the district court must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Rio Properties*, 284 F.3d at 1016-1017, quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (Jackson, J.). The Constitution "does not require any particular means of service of process, only that the method selected be reasonably calculated to provide notice and an opportunity to respond." *Id.* at 1017. Accordingly, "[i]n proper circumstances, this broad constitutional principle unshackles the federal courts from anachronistic methods of service and permits them entry into the technological renaissance." *Id.*

Similar to the defendant in *Rio Properties*, Biosmetics GmbH "has embraced the modern e-business model," maintaining a web site (http://www.biosmetics.de/) in eight languages (including German and English) for international sales (Gordet Decl., Par. 6), and inviting customers and others across the world to communicate via a "contact form" on the web site and via an e-mail address prominently displayed on the web site (sales@biosmetics.de) (Gordet

Decl., Par. 6). Biosmetics GmbH has also used e-mail to communicate with AEGIS in the ordinary course of business. (Gordet Decl., Par. 7). Multiple e-mails were exchanged within the past year between Bridgett Saylor (office manager of AEGIS) and Joachim Schmidt (officer and "Gesellschafter," or shareholder of Biosmetics, with messages being sent to, and replies received from, Joachim Schmidt at jschmidt@biosmetics.de, with copies to Christian Schmidt (officer of Biosmetics GmbH) at CSchmidt@biosmetics.de and Ulrike Schmidt (officer and "Geschäftsführer," or manager, of Biosmetics GmbH) at uschmidt@biosmetics.de. (Gordet Decl., Par. 7). E-mail messages from Joachim Schmidt identify a facsimile (fax) number for Biosmetics GmbH as +49 [0] 451 | 20 351 03. (Gordet Decl., Par. 7).

In the years since *Rio Properties* was decided, there have been numerous decisions, from this district and others, authorizing service on foreign defendants by e-mail pursuant to Rule 4(f)(3). As recently as September 21, 2016, for example, Judge Feinerman authorized alternative service by e-mail (and by delivery to defendant's U.S. - based attorney) on defendant Mark Karpeles, the founder of defunct Bitcoin exchange Mt. Gox, after a failed effort to serve Karpeles in Japan under the Hague Convention. *Greene et al v. Mark Karpeles and Mizuho Bank, Ltd.*, Case No. 14 C 1437 (Sept. 21, 2016 Minute Order, Doc. # 235).[10]

Other decisions from this district include *In re Potash Antitrust Litig.*, 667 F Supp 2d 907 (N.D. Ill. 2009)[11] (Judge Castillo), (authorizing alternative service on Russian defendants consisting of e-mail, facsimile, delivery to U.S. subsidiary's office, and delivery to defendants' counsel in United States); and *Maclean-Fogg Co. v. Ningbo Fastlink Equip. Co.*, No. 08 CV 2593, 2008 U.S. Dist. LEXIS 97241; 2008 WL 5100414 (N.D. Ill. 2008) (Magistrate Judge

---

[10]  A transcript of the September 21, 2016 hearing, where Judge Feinerman set forth his reasons for authorizing alternative service, is included as Exhibit 4 to the Declaration of Roy S. Gordet (Par. 10).

[11]  Vacated on other grounds, remanded, 657 F3d 650 (7th Cir. 2011), affd, on reh, en banc, 683 F3d 845 (7th Cir. 2012), and cert dismd (US 2013), 134 S Ct 23, 186 L Ed 2d 936.

Mason) (authorizing service on Chinese defendants by e-mail and fax where plaintiffs demonstrated that defendants "conduct business through their website and correspond with customers via email and facsimile" and that it was highly likely that defendants "would receive and respond to e-mail communications, as shown by the inclusion of e-mail addresses on [corporate defendant] Ningbo Fastlink's website.").

Outside this district, *F.T.C. v. PCCare247 Inc.*, No. 12 Civ. 7189, 2013 U.S. Dist. LEXIS 31969 at *12-*13, 2013 WL 841037 (S.D.N.Y. March 7, 2013), is instructive. Authorizing service primarily by e-mail (and secondarily by Facebook) on defendants in India, the court explained:

> Service by email alone comports with due process where a plaintiff demonstrates that the email is likely to reach the defendant. *Gurung, 279 F.R.D. at 220*; *see also Philip Morris, 2007 U.S. Dist. LEXIS 19780, 2007 WL 725412, at *3* (authorizing service by email where "defendants conduct business extensively . . . through their Internet websites and correspond regularly with customers via email" and rejecting "[d]efendants' objections about theoretical reliability of email service" where plaintiff "amply demonstrated the high likelihood that defendants would receive and respond to email communications"); *Williams-Sonoma Inc. v. Friendfinder Inc., No. C 06-06572 JSW, 2007 U.S. Dist. LEXIS 31299, 2007 WL 1140639, at *2 (N.D. Cal. Apr. 17, 2007)* (authorizing service by email where plaintiff "has established that the email accounts [it has] for defendants have been effective means of communicating with defendants"). Here, defendants ran an internet-based business and used email frequently for communication. *See, e.g*., Novick Decl. Ex. 31, Att. A at 10-25. The FTC has identified email addresses for each individual defendant, and these defendants serve as directors of the defendant corporations. * * * Service by email alone, therefore, would comport with due process. *See Gurung, 279 F.R.D. at 220*; *Phillip Morris, 2007 U.S. Dist. LEXIS 19780, 2007 WL 725412, at *3*.

Similar decisions authorizing e-mail (alone or in conjunction with some other method) as a means of serving foreign defendants under Rule 4(f)(3) include, for example, *Lexmark Int'l, Inc. v. Ink Techs. Printer Supplies, LLC*, 295 F.R.D. 259, 261-62 (S.D. Ohio 2013) ("[Chinese defendants] . . . are business entities with websites on which they provide email addresses where they may be contacted. Plaintiff also . . . has verified that each of the email addresses . . . is

valid, and that communication has occurred with a representative of the respective Defendant at those email addresses."); *Gurung v. Malhotra*, 279 F.R.D. 215, 220-221 (S.D.N.Y. 2011) (granting default judgment based on service on defendant in India by e-mail and publication); *Williams v. Adver. Sex L.L.C.*, 231 F.R.D. 483, 486-88 (N.D.W. Va. 2005) (plaintiff "demonstrated that a reliable channel of communication to defendant . . . exists by way of e-mail addresses linked to established websites that . . . [defendant] uses to conduct business."); *Popular Enterprises, LLC v. Webcom Media Group, Inc.*, 225 F.R.D. 560, 562-563 (E.D. Tenn. 2004) (where defendant's address in Portugal was unknown, but e-mail sent to an address that defendant provided to its domain name registrar "did not bounce back," court authorized service exclusively by e-mail); *Chanel, Inc. v. Zhixian*, No. 10-60585, 2010 U.S. Dist. LEXIS 50745, 2010 WL 1740695, at *4 (S.D. Fla. Apr. 29, 2010) (authorizing service via e-mail and public announcement); *United States CFTC v. Aliaga*, 272 F.R.D. 617, 619-20 (S.D. Fla. 2011) (service on defendants believed to be in Dominican Republic, by e-mail and local counsel); *Ryan v. Brunswick Corp.*, 2002 U.S. Dist. LEXIS 13837, No. 02-CV-0133E, 2002 WL 1628933 (W.D.N.Y. May 31, 2002) (where Taiwanese defendant's web site directed others to communicate with it at designated address, fax number and e-mail address, court authorized alternative service by all of those means).

This very substantial body of authority illustrates that service by e-mail (and by other electronic methods such as facsimile and social media messaging) has now become a common and accepted practice in federal courts. In fact, "Email communications may be *more* reliable than long-distance postal communications, and the arrival of an email at its destination address may be more readily tracked." *Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329, 331-32 (S.D.N.Y. 2015) (emphasis added). Transmitting the summons and complaint to the e-mail

addresses that Biosmetics GmbH has used in the ordinary course of its business, and continues to invite the public to use, is more than "reasonably calculated, under all the circumstances, to apprise . . . [defendant] of the pendency of the action and afford them an opportunity to present their objections. *Rio Properties*, 284 F.3d at 1016, quoting *Mullane, supra*.

Alternative service by e-mail (or by other means) surely will come as no surprise to Biosmetics GmbH, which by now is well aware of this lawsuit, likely from multiple sources (including its U.S. distributor, co-defendant QBS) but in particular from its Washington, D.C. attorney, Janice Housey. With full knowledge of this action in federal district court, Biosmetics GmbH continues to engage in gamesmanship, having retained attorney Housey to prosecute federal trademark cancellation proceedings against AEGIS – proceedings which have now been stayed in deference to this more comprehensive civil action – yet refusing to authorize attorney Housey to accept service of the complaint here.[12] As a consequence, AEGIS has been forced to spend thousands of dollars attempting to serve Biosmetics GmbH under the Hague Convention's

---

[12] That Biosmetics GmbH knows of this civil action, yet has not stepped forward to accept service through its attorney in the TTAB proceeding that it commenced against AEGIS, is disturbing. Biosmetics, through attorney Housey, filed its Petition to Cancel with the Trademark Trial & Appeal Board ("TTAB") on May 16, 2016 (Cancellation No. 92063757), alleging that it is the true owner of the mark INTENSIVE in the United States. (Gordet Decl., Par. 11). In a letter dated April 22, 2016, attorney Housey alleged that "AEGIS, Inc. has wrongly claimed Biosmetics's [sic] INTENSIVE trademark as its own" and demanded that AEGIS assign its rights in the mark to Biosmetics. (Gordet Decl., Par. 12). On July 5, 2016, AEGIS filed its motion to suspend the TTAB proceedings in deference to this more-comprehensive civil action. (Gordet Decl., Par.13). Over the written objections of Biosmetics (also filed by attorney Housey), the TTAB suspended the proceedings. (Gordet Decl., Paras. 13, 14). Also see TTAB Order dated August 2, 2016 (Gordet Decl., Par. 14, Ex. 6). It is beyond cavil that the stay was premised on Biosmetics being included as a party in this federal district court action. Nonetheless, with full knowledge of this action, the desire of both AEGIS and QBS that Biosmetics participate in this action so that the dispute can be resolved promptly through adjudication or alternative dispute resolution, and the TTAB's assumption that Biosmetics would be an active participant in this civil action, Biosmetics audaciously refuses to authorize attorney Housey to accept service of process or to otherwise come before this Court to assert its rights, to say nothing of defending its current distributor, defendant QBS, who is advertising and selling INTENSIVE products in the United States. See Transcript of Proceedings (Gordet Decl., Par. 9, Ex. 3) (memorializing attorney Housey's disavowal of authorization to accept service on behalf of her client, Biosmetics GmbH).

cumbersome procedures (unsuccessful to date) while AEGIS, QBS and this Court are forced to wait as the painfully slow process of effecting overseas service unfolds.

In a stunning admission that she and her client knew this would be the result of refusing to accept service on Biosmetics GmbH, Ms. Housey actually argued that the TTAB proceeding should not be suspended because serving her client in Germany with suit papers in this civil action would take too much time:

> Due to the requirements of the Hague Convention, the particular requirements mandated by Germany for service of process under the Convention etc., service of Respondent's Amended Complaint in the Civil Action on Petitioner in Germany is likely to be extremely time-consuming and potentially complex. Thus, service of the Amended Complaint in the Civil Action on Petitioner is likely to cause significant delays in the progress of the Civil Action.

*Petitioner's Response in Opposition to Respondent's Motion to Suspend Proceeding* (Gordet Decl., Par. 13, Ex. 5).

In authorizing alternative service recently in another case in this district, Judge Feinerman commented on such gamesmanship, finding that it would be "inequitable and arguably perverse" to allow defendant to evade service in his court while giving defendant the benefit of maintaining a related action in another district. Transcript of Proceedings, Sept. 21, 2016, *Greene et al v. Mark Karpeles and Mizuho Bank, Ltd.*, Case No. 14 C 1437 pp. 5-6 (Gordet Decl., Par. 10, Ex. 4).

**(4)  Service by E-Mail is Needed to Move This Case Forward.**

Counsel for AEGIS commenced the process of effecting service under the Hague Convention immediately after the August 9 hearing.  (Gordet Decl., Paras. 2, 3).  With regard to that process, nothing more can be done now except to wait for Germany's Central Authority to act.  As indicated above, the German Central Authority may not effectuate service on Biosmetics

GmbH, if ever, until mid-December. (Gordet Decl., Par. 4). Authorizing service by e-mail would avoid this needless delay and would allow the parties to move this case forward.

In *F.T.C. v. PCCare247 Inc.*, 12 Civ. 7189, 2013 U.S. Dist. LEXIS 31969, 2013 WL 841037, at *3-*4 (S.D.N.Y. March 7, 2013), the court ordered service by e-mail under circumstances similar to those here:

> The FTC has made ample attempts to serve defendants by other means, but it is now left with no way to do so except by the Indian Central Authority, which to date has not shown a disposition to act—or even to respond to the FTC's queries. This litigation must move forward, and it is not tolerable to wait five months (or more) for every motion in this case to be served by the Central Authority. *See Richmond Techs., Inc. v. Aumtech Business Solutions, No. 11-CV-02460-LHK, 2011 U.S. Dist. LEXIS 71269, 2011 WL 2607158, at *13 (N.D. Cal.July 1, 2011)* (authorizing alternative service where service via Indian Central Authority would take 6-8 months). The Court's intervention is warranted here.

The court authorized alternative service by means of e-mail and Facebook. *Id.* Like the situation that the court faced in *F.T.C. v. PCCare247 Inc.*, "[t]his litigation must move forward," and it is not tolerable to wait month after month for the German Central Authority to serve Biosmetics GmbH.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, plaintiff AEGIS respectfully requests this Court to enter an order authorizing alternative service on defendant Biosmetics GmbH in Germany, pursuant to Fed. R. Civ. P. 4(f)(3), by: (1) sending the Summons and First Amended Complaint to attorney Janice Housey by the means specified in AEGIS' Initial Motion filed on July 21, 2016; or in the alternative, (2) transmitting the Summons and First Amended Complaint via e-mail to the following addresses: sales@biosmetics.de, jschmidt@biosmetics.de, with copies to CSchmidt@biosmetics.de and uschmidt@biosmetics.de, and, if the Court deems it

necessary, also transmitting the Summons and First Amended Complaint via facsimile to

fax number +49 [0] 451 | 20 351 03.

 Dated: October 31, 2016

                              Respectfully submitted,


Local Counsel (LR 83.15):



                    By:  _____

                              Alfred L. Buchanan (IL Bar No. 6203889)
                              Neal F. Thompson (IL Bar No. 6181456)
                              Michaels, Schulwolf & Salerno, P.C.
                              300 S. Wacker Drive
                              Suite 1650
                              Chicago, IL 60606
                              Telephone:     (312) 428-4720
                              Facsimile:     (312) 575-8679
                              abuchanan@msslawpc.com
                              nthompson@msslawpc.com


Lead Counsel:


                              Roy S. Gordet, Esq. (CA Bar No. 103916)
                              Law Offices of Roy S. Gordet
                              235 Westlake Center #452
                              Daly City CA 94015
                              Tel. 650-757-6147
                              Fax 650-735-3380
                              Email roy@copyrightdirection.com
                              Admitted *pro hac vice*



                              **Attorneys for Plaintiff The American Export Group &
                              International Services, Inc. dba AEGIS, Inc., a
                              Delaware Corporation**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on October 31, 2016, a true and correct copy of Plaintiff AEGIS' Renewed Motion for Alternative Service on Biosmetics GmbH was filed electronically. Notice of this filing will be sent to the parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/Alfred L. Buchanan*